UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL GIBB, *et al*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | CIVIL ACTION G-07-329 |
| | § | |
| CITY OF FRIENDSWOOD, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant's renewed motion for judgment on the pleadings or alternatively, summary judgment. Dkt. 30. Upon considering the parties' arguments, the valid summary judgment evidence, and the applicable law, the court is of the opinion that the defendants' motion for summary judgment be GRANTED.

**BACKGROUND**

In the fall of 2005, plaintiffs Michael and Cathy Gibb purchased two acres of land at 908 West Edgewood in the City of Friendswood. Dkt. 17, Ex. 1 at 2. This property is not in a planned development. *Id.* The title records for the property reflect a 30' drainage easement but no other conditions related to drainage or flood control. *Id.* The plaintiffs allege that they had no knowledge of any special flood control requirements when they purchased the property. *Id.*

In July 2006, the Gibbs hired a contractor to build a home on the property. *Id.* The contractor applied to the City of Friendswood for a building permit. *Id.* He was told that a drainage plan approved by the City and by the Galveston County Consolidated Drainage District ("GCCDD") was required to obtain a building permit. *Id.*

The City's Storm Drainage Design Requirements state that "[a]pproval of storm drainage is part of the review process for planning and platting of new development."[1] Design Criteria Manual, Storm Drainage Requirements § 1.01(D).  These requirements were adopted by the City Council on January 17, 2005.  *See* Friendswood, Tex., Resolution R2005-05 (Jan 17, 2005).  The City's Building Code also requires approval of a site drainage plan in accordance with Chapter 34 of the City Code before improvements are made to any property in the City.  *See* Friendswood, Tex., Building Code § 14-26.  Chapter 34, Section 32 of the Friendswood City Code requires a permit for any development to ensure compliance with the flood-control provisions of Chapter 34.  Chapter 34, Section 34-34 of the Code sets out the variance procedures, which state that the appeals board will hear requests for variances.  Section VII of the Design Criteria Manual also includes a procedure for obtaining a modification of the Manual's requirements.  In 1991 and again in 1998, the City contracted with GCCDD (then "CCDD") to have GCCDD review drainage plans and approve any plans that required discharge into a GCCDD facility.  Dkt. 30, Ex. 7.

The Gibbs allege that they and the contractor "appealed to various officials and representatives of the City and GCCDD" for relief from the requirement to submit a drainage plan, but that these officials did not provide relief.  Dkt. 17, Ex. 1 at 2.  The Gibbs then hired an engineer to design a drainage plan.  The engineer estimated that the drainage work would cost over $15,000 and told the Gibbs that the Texas Department of Transportation would have to approve the plan.  Dkt. 35.

On October 12, 2006, TXDOT approved the installation of a pipe crossing its right of way but refused to approve the overall plan without certain modifications.  Dkt. 35.  GCCDD

---

[1] The Design Criteria Manual, which contains the Storm Drainage Design Requirements, is attached to the City's Renewed Motion at Exhibit 5.  The court may take judicial notice of this and all public documents cited by either party.  *See In re Browning-Ferris Indus., Inc.*, 830 F. Supp. 361, 367 n.2 (S.D. Tex. 1993).

approved the plan.  TXDOT informed the Gibbs that, although it apparently had the right to refuse approval of the drainage plan, TXDOT itself did not require a drainage plan.  Dkt. 35. The Gibbs again "appealed" to various officials for unspecified relief.  Dkt. 17, Ex. 1.

The Gibbs then made the modifications to the plan as demanded by TXDOT.  The City issued a building permit, and the Gibbs had the house built.  Dkt. 35.  The Gibbs allege that nothing in the City Building Code requires the extensive and expensive drainage system that was approved; that GCCDD does not have the power to impose any flood control requirements on single-family residential lots; and that TXDOT does not require drainage plans in these circumstances.

The Gibbs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and Tex. Civ. Prac. & Rem. Code § 37.004 that no statute, ordinance, or regulation required them to construct a drainage system on their property and that the City and GCCDD did not have the authority to require them to construct one.  The Gibbs allege that the City's actions constitute a regulatory taking or inverse condemnation and demand just compensation for the City's interference with the use and enjoyment of their property.  They also allege that the City's "refusal to issue the building permit without construction of an elaborate, expensive, and wholly unnecessary drainage system" is a taking without compensation in violation of the U.S. and Texas constitutions.  Dkt. 17, Ex. 1 at 5.  They allege that the City violated their right to equal protection under the Fourteenth Amendment to the U.S. Constitution.  They allege that the City violated their substantive and procedural due process rights by denying them an opportunity to be heard and because the requirement to construct the drainage system was unreasonable and arbitrary.  The Gibbs claim that the City is liable to them pursuant to 42 U.S.C. § 1983 because the City acted under color of state and city law to deprive them of property rights.  The Gibbs

also claim that the City is liable to them pursuant to the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code § 101.0215(a).  Finally, the Gibbs claim that the City negligently misrepresented that GCCDD had to approve the drainage system before the City could approve a building permit and that the City provided the Gibbs with false information about the requirements for building a home on their property.  The Gibbs also argue that the court must give them notice as to whether it is considering the City's Motion under the standard for a judgment on the pleadings or summary judgment.

### LEGAL STANDARD

Fed. R. Civ. P. 12(c) states as follows:

> After the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings.  If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

"A motion for judgment on the pleadings must be sustained where the undisputed facts appearing in the pleadings, supplemented by any facts of which the court will take judicial notice, show that no relief can be granted."[2]  *J.M. Blythe Motor Lines Corp. v. Blalock*, 310 F.2d 77, 78-79 (5th Cir. 1962); *see also Brittan Communications Int'l Corp. v. Southwestern Bell Telephone Co.*, 177 F. Supp. 2d 580, 584 (S.D. Tex. 2001).  The court must view all facts in the light most favorable to the non-moving party.  *Brittan*, 177 F. Supp. 2d at 584.  The court can take judicial notice of the public laws of a state.  *J.M. Blythe*, 310 F.2d at 78.

---

[2]     The City has made an alternative motion for summary judgment, and the Gibbs have moved for a continuance of the summary judgment motion because they wish to conduct further discovery.  However, as explained below, the Gibbs have failed to allege the necessary facts to state their claims, and the court has not considered the City's motion under the summary judgment standard.

**ANALYSIS**

**1.      Section 1983 Claim**

42 U.S.C. § 1983 entitles a plaintiff to bring an action against any person who deprives the plaintiff of his constitutional rights under color of any "statute, ordinance, regulation, custom, or usage, of any State or Territory."  A plaintiff in a Section 1983 case against a municipality must allege facts showing that (1) the harm "was caused by a constitutional violation" and (2) that the municipality "is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S. Ct. 1061 (1992).  The plaintiff must show that the municipality had an official policy that caused the constitutional violation. *See id*. at 121 (citing *Monell v. New York City Dep't. of Social Servs*., 436 U.S. 658, 691, 98 S. Ct. 2018 (1978)).  A municipality cannot be liable for tortious actions of its employee under a *respondeat superior* theory.[3]  *Collins*, 503 U.S. at 121.  The actions of a single employee without policy-making authority who applies a policy in an unconstitutional manner cannot create liability under Section 1983 for the municipality.  *Id*. at 121-122; *City of Canton v. Harris*, 489 U.S. 378, 387 109 S. Ct. 1197 (1989).  Section 1983 is not intended to create a process for review by the federal courts of every decision made by an employee of a municipality.  *See, e.g., Bishop v. Wood*, 426 U.S. 341, 349-50, 96 S. Ct. 2074 (1976).

The city council holds the policy-making authority for the City.  *See* FRIENDSWOOD CITY CHARTER § 3.07.  Although various City employees are involved in reviewing and granting building permits, the discretion of these employees is cabined by the actions of the City Council, and so the City Council remains the policymaker.  *See Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990).  The building permit officials did not have "final authority in a matter

---

[3]      The single exception to this rule is when a plaintiff alleges that a municipality has failed to train an employee. The Gibbs have not alleged that the City failed to train its employees.

involving the selection of goals or of means of achieving goals." *Bowen v. Watkins*, 669 F.2d 979, 989 (5th Cir. 1982). The City, therefore, is only liable for the actions of the City Council. *See id*. at 990. The Gibbs have claimed that the ordinances and other actions of the City Council have violated their procedural and due process rights and their right to equal protection of the laws.

A.      **Equal Protection**

The Gibbs allege that the City did not require other similarly-situated landowners to construct such expensive drainage systems. The Equal Protection Clause of the Fourteenth Amendment has been interpreted to require that laws be facially nondiscriminatory and that laws "be executed so as not to deny equality." *Mahone v. Addicks Utility Dist.*, 836 F.2d 921, 932 (5th Cir. 1988). When a municipality does use a classification, that classification must be rationally related to a legitimate government interest. *Id*. at 933. When a plaintiff claims to be a "class of one," the plaintiff must show that the government entity selectively enforced the ordinances against them based on their race, religion, or other impermissible classification, or based on personal vindictiveness. *See Bryan v. City of Madison*, 213 F.3d 267, 277 (5th Cir. 2000); *Allred's Produce v. United States Dep't. of Agric.*, 178 F.3d 743, 748 (5th Cir. 1999).

On its face, the City's codes and ordinances do not treat similarly-situated landowners differently, and the Gibbs have not claimed this. All landowners were required to file a drainage plan, and the various officials to whom the Gibbs appealed in fact confirmed that it was highly unlikely that the Gibbs could obtain a waiver of this requirement. *See* Friendswood Building Code § 14-26; Design Criteria Manual, Storm Drainage Requirements § 1.04(B), (G).

The Gibbs have not alleged any facts showing that the City itself took any actions or had any policy of applying the building codes unevenly. The Gibbs have not alleged that they or any

other property owners were "classified" in any way with respect to the application of the City's building codes.  To the extent they are a "class of one," they have not made any allegations that the City itself selectively enforced the rules against them because of any invidious classification or personal vindictiveness.  They have not even alleged that any members of the City Council were aware of their predicament.

In fact, the Gibbs have submitted evidence that, after their application, certain members of the City Council have made efforts to rescind these ordinances with respect to small residential properties demonstrating that *many* people have found the drainage requirements to be too expensive, and this discourages them from buying and developing property.  Dkt. 35, Ex. 3.  This shows the opposite of what the Gibbs contend:  these ordinances have inconvenienced many people in exactly the same manner as the Gibbs.  The fact that the City Council has decided to change the ordinances does not mean that the original ordinances violated the Constitution; it merely means that the legislative body of the City has made a different judgment about how to approach flood prevention.  *See, e.g., Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S. Ct. 1028 (1963) (noting that legislatures have "broad scope to experiment"); *Bibb v. Navajo Freight Lines, Inc*., 359 U.S. 520, 524, 79 S. Ct. 962 (1959) ("If there are alternative ways of solving a problem, we do not sit to determine which of them is best suited to achieve a valid state objective.").

The Gibbs also argue that they were treated differently because they were not granted the benefit of an exception for owners of small residential properties who cover less than 10% of the surface area with an impervious structure.  They allege that they fit the requirements for this exception.  However, this law was not in force when they made their initial application for a building permit and were told they needed to file a drainage plan.  The drainage requirements

were put in place on January 17, 2005, without any exceptions.  *See Friendswood, Tex.,*
Resolution R2005-05 (Jan. 17, 2005).  The Gibbs applied for a permit on July 5, 2006.  Dkt. 35,
Ex. 3-E.  On September 11, 2006, the City amended the design requirements to include this
exception.  *See* Friendswood, Tex., Resolution R2006-24 (Sept. 11, 2006).  Even if this
exception was available at the time they applied for a building permit, a mistake by the City
official in applying the exception is simply not a violation of the Fourteenth Amendment.  Even
if an individual city employee applied the law incorrectly and caused the Gibbs to install a more
extensive drainage system than other property owners, that does not make the City liable for a
constitutional violation under Section 1983.  Negligence rarely rises to the level of a
constitutional violation.  *See, e.g., Cole v. Finsel*, 691 F. Supp. 841, 849-50 (M.D. Pa. 1988)
(finding that a city official's allegedly negligent failure to warn property owners that their
property was not suitable for the kind of sewage system for which they had received a permit
was not a constitutional violation).  Moreover, the Gibbs cannot argue that the exception itself
denies them equal protection of the laws because they allege that they are eligible for the
benefits conferred by the exception.  Accordingly, the Gibbs have not stated a claim for a
violation of their Fourteenth Amendment right to equal protection of the laws.

     **B.**    **Substantive Due Process**

     To state a claim for violation of substantive due process rights, a plaintiff must show an
arbitrary and capricious denial of a constitutional right.  *See FM Props. Operating Co. v. City of
Austin*, 93 F.3d 167, 172 (5th Cir. 1996).  Courts look on substantive due process claims with
disfavor.  *See Collins*, 503 U.S. at 125.  In particular, land-use regulations are considered the
province of state and local governments, only to be disturbed by the federal courts when the
regulations have no rational relation to a legitimate government interest.  *See FM Props.*, 93 F.3d

at 174.  Further, substantive due process claims should not be used to replace state tort law.  *See DeShaney v. Winnebago County Dep't. of Social Servs.*, 489 U.S. 189, 202, 109 S. Ct. 998 (1989).

The Gibbs have not alleged a violation of any constitutionally-protected interest.  They cite *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (2006), for the proposition that citizens have a protected interest in their homes.  However, the City's actions did not violate the Gibbs' interest in their home.  First, when they applied for a building permit, they had not yet built a home on the property (unlike the plaintiffs in *Mikeska*, whose existing homes were affected by the city's actions).  Second, the Gibbs were granted a permit and did build a home on the property.

The City has asserted that the ordinances in question are rationally related to its legitimate interest in flood prevention and reduction of flood insurance rates.  *See* DESIGN CRITERIA MANUAL, STORM DRAINAGE REQUIREMENTS § 1.01; Friendswood, Tex., Resolution R2005-05 (Jan. 17, 2005).  The Gibbs do not dispute that these are legitimate interests of the City.  *See Dolan v. City of Tigard*, 512 U.S. 374, 387, 114 S. Ct. 2309 (1994) (noting that prevention of flooding is a "legitimate public purpose").  Although the Gibbs dispute whether a drainage plan was truly necessary for their particular property, they do not allege that the ordinances did not generally promote the goal of flood prevention or insurance rate reduction.  As a matter of law, the ordinances bore a rational relationship to the City's legitimate goal of flood prevention.  *See id.* ("It seems equally obvious that a nexus exists between preventing flooding  . . . and limiting development.").  Whether the ordinances were perfect is not relevant to the constitutional inquiry and is a matter for the legislative process.  *See Ohio Bureau of Employment Servs. v. Hodory*, 431 US. 471, 489, 97 S. Ct. 1898 (1977).  Therefore, the Gibbs

have not stated a claim for a violation of their right to substantive due process because the City's ordinances did not deny them a constitutionally-protected right and the City's ordinances bear a rational relationship to their legitimate objectives.

### C.     Procedural Due Process

Due process requires notice and an opportunity for a hearing before a government entity can deprive a person of property rights. *See, e.g., Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 299 (5th Cir. 1998). The Gibbs have not alleged any facts showing that they were denied any procedural due process rights. They admit that they do not have any complaints about the legislative process by which the City Council enacted the ordinances and codes. Dkt. 35. Rather, they claim that the City did not provide a legitimate appeal process. They allege that the Construction Board of Appeals was not active and the City did not inform them of the process for appealing or requesting a variance. The Gibbs never attempted to file an appeal or to pursue a variance through the official channels. The appeals board need never have heard another claim as long as it was willing to hear an appeal from the Gibbs, but they did not file an appeal. Dkt. 17, Ex. 1 at 3. Also, government entities are not typically responsible for explaining the law to citizens absent a statute creating such a duty, and the City had no duty to inform the Gibbs about their legal rights with respect to an appeal of a permit decision. *See, e.g., United States v. Gibson*, 204 Fed. Appx. 388, 389 (5th Cir. 2006) (holding that district court had no duty to explain parole eligibility to a defendant); *Kim v. United States*, 47 Fed. Cl. 493, 502 (Ct. Fed. Cl. 2000) (holding that army officers had no affirmative duty to inform the plaintiff of her right to appeal). Even if the City were responsible, the Gibbs have not alleged that the City had any policy of failing to inform citizens about the appeals process or that the City Council had any involvement whatsoever.

The Gibbs also claim that they were denied their procedural due process rights because they had no opportunity to be heard on GCCDD and TXDOT's enactment of drainage standards. If GCCDD or TXDOT denied the Gibbs their due process rights, the Gibbs must bring a claim against those entities, not against the City.

The City has the right pursuant to Tex. Gov't Code Ann. § 791.001 *et seq*. (Vernon 2004) to enter into contracts with other government entities for the provision of services.  The City contracted with GCCDD for permit review.  When a municipality has the right under state law to carry out administrative functions without notice and an opportunity for a hearing, the municipality is not liable for a violation of procedural due process rights.  *See Gonzalez v. City Plan Comm'n*, No. 3:05-CV-1737-M, 2007 WL 1836872, at *5 (N.D. Tex. June 26, 2007) (finding that a city had not violated the plaintiff's due process rights when it sold certain property without notice and an opportunity to bid because state law permitted this).  The Gibbs, therefore, cannot claim that the City denied them due process rights when it entered into this contract with GCCDD.  In addition, the Gibbs have not alleged facts showing that this contract actually deprived them of any property rights, particularly given that the City entered into the contract well before the Gibbs purchased the property.  Accordingly, the Gibbs have failed to state a claim for procedural due process.

### D.    Taking

The Gibbs claim that the City took their property without just compensation in violation of their rights under the Fifth Amendment to the U.S. Constitution and Article I, Section 17 of the Texas Constitution.  The City argues that the Gibbs' takings claims are not ripe because they did not obtain a final decision on the application of the City's ordinances to their situation by seeking a variance or by using the City's appeals process.

With respect to federal takings claims, when a "property owner has ignored or abandoned some relevant form of review or relief . . . the takings claim should be dismissed as unripe." *Urban Developers LLC v. City of Jackson, Mississippi*, 468 F.3d 281, 293 (5th Cir. 2006). It is necessary for a plaintiff to pursue any state procedures for obtaining just compensation before bringing a federal takings claim. *See Williamson County*, 473 U.S. at 195. If a state has an inverse condemnation procedure for regulatory takings, a plaintiff must pursue that before a federal claim is ripe. The Fifth Circuit has found that Texas has procedures for demanding compensation from the state for a taking. *See Sammad v. City of Dallas*, 940 F.2d 925, 935 (5th Cir. 1991).

In this case, the Gibbs submitted a drainage plan and received a building permit. They failed to pursue any appeal or variance from the objectionable aspects of the plan. Also, the Gibbs have not attempted to use Texas's inverse condemnation procedure. Although they now bring a takings claim under the Texas Constitution, this claim must be pursued and denied before a federal claim is ripe. *See Samaad*, 940 F.2d at 934-35. Therefore, the Gibbs' federal takings claim is not ripe because they ignored relevant methods of review and have not sought compensation.

Article 1, Section 17 of the Texas Constitution prohibits the taking over property without just compensation. The Texas Supreme Court has analyzed state-law takings claims under the rubric of federal takings claims. *See Hallco Texas, Inc. v. McMullen County*, 221 S.W.3d 50, 56 (Tex. 2006); *Mayhew v. Sunnyvale*, 964 S.W.2d 922, 932 (Tex. 1998). However, the ripeness analysis under Texas law is not identical. A plaintiff need not seek compensation before pursuing a state takings claim. A plaintiff must have a final decision on the applicability of the law or regulation, but no Texas court has held that a plaintiff with a final decision granting a

permit must pursue all appeals and variances available.  Because the court finds that the Gibbs have not stated a claim for a taking, the court need not decide whether, under Texas law, their claim is ripe.

 *i.  Regulatory Taking*

 A "regulatory taking" occurs when a law imposes such a burden on property rights that the owner is denied "all economically beneficial or productive use" of the property or the law unreasonably interferes with the owner's right to use the property (generally by requiring physical access, such as allowing cable companies to install their equipment on a building or requiring public access to part of the land). *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886 (1992); *see also Dolan v. City of Tigard*, 512 U.S. 374, 385, 114 S. Ct. 2309 (1994).  Landowners should expect some government regulation of their property, including regulation imposed after they purchase the land.  *See Lucas*, 505 U.S. at 1027-28.  A regulation that merely causes some economic harm but that does not severely affect the value of the property or interfere "with distinct investment-backed expectations" is not a taking.  *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124-25, 98 S. Ct. 2646 (1978); *Hallco*, 221 S.W.3d at 56.

 The Gibbs have not alleged that the drainage system they installed deprived them of all economically beneficial use of their property or had a severe impact on the value of their property.  They allege that the plan and its implementation cost over $40,000, but they do not compare this to the value of the house they built or to the cost of the property.  *Cf. Hallco*, 221 S.W.3d at 57 (noting that plaintiffs had proof that the ordinance decreased the value of their property by 99%).  They make vague allegations that the drainage system is unsightly, but they do not allege any facts about how this has affected the value of the property.  It is also very

likely that the City's flood-prevention regime benefits the Gibbs, both in terms of the value of their property and in their insurance rates. *See Penn Cent.*, 438 U.S. at 134-35. The fact that they decided to go ahead and build their house on the property demonstrates that the City's ordinances did not deprive the Gibbs of all beneficial use of their property and did not prevent them from using it for the expected purpose. *See id*. at 136.

The Gibbs do not allege that the City's ordinances do not "substantially advance" the City's legitimate interest in flood prevention. *Mayhew*, 964 S.W.2d at 934. As explained above, the Gibbs question whether these ordinances further that interest with respect to their property, but they do not allege any facts showing that the ordinances did not generally prevent property damage or destruction from flooding. Also, the City provided a method for property owners to obtain relief from the ordinances, presumably in situations in which the drainage requirements would not have any substantial effect on flooding, but the Gibbs chose not to appeal or seek a variance. *See* FRIENDSWOOD CODE Ch. 34, §34-34. Thus, the Gibbs have not stated a claim for a regulatory taking of their property because they have not alleged facts showing that the City denied them all economically beneficial use of their property or unreasonably interfered with their property rights, or that the City's ordinances did not substantially advance legitimate goals.

## ii. Physical Taking

The Gibbs also allege that the requirement to construct a drainage system constitutes a physical invasion of their property by the City. However, a physical taking only occurs when the government takes title to property, requires a property owner to open the property to someone else, or causes the property to be invaded by something belonging to the government or another party. *See Urban Developers, 468 F.3d at 294* ("[A] non-regulatory taking requires actual government confiscation or physical occupation"); *City of Dallas v. Blanton,* 200 S.W.3d 266,

(Tex. App.—Dallas 2006) (listing examples of physical invasion, such as flooding caused by the operation of a dam and "noxious vapors" from a railroad).  The requirement that a property owner construct something of his own on the land is not a physical taking by the government. *See Blanton*, 200 S.W.3d at 272 (finding that a requirement that property owners replace and reroute plumbing on their property was not a physical taking).  The government has not occupied the Gibbs' property or allowed anyone else to occupy the Gibbs' property.  The government has not caused any substance generated by the City to invade the Gibbs' property.  Therefore, Gibbs have not stated a claim for a physical taking of their property.

## 2.    Texas Tort Claims Act

### A.    Damage from Motor-Driven Vehicles

The Gibbs also claim that the City is liable under Tex. Civ. Prac. & Rem. Code §§ 101.021 and 101.0215(a) (Vernon 2005) for the damage caused by motor-driven vehicles used in the excavation and construction of the drainage system.[4]  However, the Gibbs' claims fail for two reasons.

First, the City has not waived sovereign immunity with respect to legislative decisions, *i.e.*, the enactment of the ordinances.  *See* Tex. Civ. Prac. & Rem. Code § 101.052 (Vernon 2005).  Therefore, the City is not liable to the extent that the Gibbs claim that the ordinances themselves caused their damages.

Second, no City employee operated or used the motor vehicles that were used in constructing the drainage system.  Although the statute is unclear as to who must operate the motor vehicle for a municipality to be liable, Texas courts have found that a government

---

[4]     The City misstates the meaning of this section.  Section 101.0215 reads:  "A municipality is liable under this chapter for damages arising from its governmental functions," including "building codes and inspection" and "zoning, planning, and plat approval."  Section 101.025 says:  "Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."  The City says that municipalities are *exempt* from tort liability for all governmental functions.

employee must operate the motor vehicle, and this is the more logical reading in the overall context of the Texas Tort Claims Act.  *See LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992); *Sepulveda v. County of El Paso*, 170 S.W.3d at 605, 614 (Tex. App.—El Paso 2005, reh'g overruled) (reviewing case law since *LeLeaux* and finding that Texas Tort Claims Act did not apply because no county employee operated the vehicle that constructed the berm in question).

### B.    Negligent Misrepresentation

The Gibbs claim that City employees negligently represented to them that "an extensive and expensive drainage system was required to be approved by the [GCCDD] as a condition precedent to issuing a building permit."  Dkt. 7.

The Texas Tort Claims waives sovereign immunity when property damage results from "the wrongful act or omission or the negligence of an employee acting within the scope of his employment" if the injuries are caused by "the operation or use of a motor-driven vehicle or motor-driven equipment" and "the employee would be personally liable to the claimant according to Texas law."  Tex. Civ. Prac. & Rem. Code § 101.021.  The Act does not waive immunity for torts generally, so plaintiffs must allege that their injuries involved the operation or use of a motor-driven vehicle or motor-driven equipment.  The Gibbs have not alleged any facts connecting their negligent misrepresentation claim to the operation of a motor-driven vehicle or motor-driven equipment.   The City's immunity is not waived as to the negligent misrepresentation claim.  *See Kamali v. Quinn*, No. 3:06-cv-1595-B, 2006 WL 3759854, at *2 (N.D. Tex. Dec. 19, 2006) (reaching the same conclusion on a negligent misrepresentation claim).

3.      **Declaratory Judgment**

The Gibbs seek a declaratory judgment that the City's ordinances and other regulations do not, as a matter of law, require the sort of drainage system they installed.  28 U.S.C. § 2201 allows a federal court to issue a declaratory judgment when there is "an actual controversy within its jurisdiction."  In an actual controversy, the issues are "live" or the parties have a "legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944 (1969).  The Gibbs have already received their permit and constructed the drainage system.  The court has disposed of the Gibbs' other claims.  These issues are no longer "live." The Gibbs have failed to allege facts showing that there is an actual controversy.

The Gibbs also seek a declaration of their rights under the City's ordinances pursuant to Tex. Civ. Prac. & Rem. Code § 37.004 (Vernon 2007 Supp.), which allows a person with a deed to a property to obtain a declaration of rights under a statute that affects that deed.  Although the statute does not explicitly contain an "actual controversy" requirement, Texas courts have declined to issue declaratory judgments when the statute in question has been superseded or the claim is otherwise moot.  *See, e.g., Hodges v. Brazos County Water Control & Improvement Dist. No. 1*, 449 S.W.2d 861 (Tex. Civ. App.—Houston [1st Dist.] 1970, reh'g denied).  Here, Friendswood has amended the ordinance twice since the Gibbs applied for their permit such that owners of single-family residential lots may cover up to 20% of their lots without submitting a drainage plan.  A declaration interpreting the previous ordinance is moot, and the current ordinance is not before the court.  *See J.W. Nichols Co. v. White*, 325 S.W.2d 867, 879 (Tex. Civ. App.—Austin 1959).  The Gibbs have not alleged facts entitling them to a declaratory judgment on this issue.

## CONCLUSION

For the reasons stated above, the City's Motion is GRANTED. The Gibbs' equal protection, substantive and procedural due process, state-law takings, Texas Tort Claims Act, and negligent misrepresentation claims are DISMISSED WITH PREJUDICE. The Gibbs' federal takings claim and declaratory judgment claims are DISMISSED WITHOUT PREJUDICE. All Parties are to bear their own costs, expenses, and attorneys' fees incurred herein to date.

It is so ORDERED.

Signed at Houston, Texas on December 6, 2007.

_____
Gray H. Miller
United States District Judge